# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

BERNARD ALBERS and LAURA ALBERS,

      Plaintiffs,

v.                                                                                    CV 15-140 WPL/KK

CONTINENTAL CASUALTY COMPANY,

      Defendant.


## ORDER DENYING MOTION TO DISMISS
## AND ALTERNATIVE MOTION TO TRANSFER

      Defendant Continental Casualty Company ("Continental") has filed a Motion to Dismiss or in the Alternative to Transfer. (Doc. 16.) Plaintiffs Bernard and Laura Albers (collectively "Plaintiffs") filed a response (Doc. 23), and Continental replied (Doc. 24). Continental argues that I should dismiss the case entirely pursuant to Federal Rule of Civil Procedure 12(b)(6) because the Plaintiffs' claims are barred by claim preclusion,[1] based on the class action Settlement Agreement in *Pavlov v. Continental Casualty Co.*, No. 5:07-cv-2580 (N.D. Ohio Oct. 7, 2009) ("*Pavlov* Settlement"). Alternatively, Continental contends that this case must be transferred to the Northern District of Ohio under the forum selection agreement included in the terms of the *Pavlov* Settlement. The Plaintiffs counter that Continental waived any defense of res judicata, the *Pavlov* Settlement does not cover these claims, and transfer to the Northern District of Ohio would be unreasonable under the circumstances.

---

[1] The parties use the term "res judicata." However, the Tenth Circuit employs the term "claim preclusion" for the purpose of clarity. *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1202 n.6 (10th Cir. 2000).

For the reasons explained below, I deny Continental's Motion to Dismiss or in the Alternative to Transfer.

STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), the Court considers whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss under Rule 12(b)(6), the Court considers "the complaint as a whole, along with the documents incorporated by reference into the complaint" and construes all well-pleaded allegations in the light most favorable to the plaintiff. *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1146 (10th Cir. 2015) (citations omitted).

Generally, a motion to dismiss under Rule 12(b)(6) is limited to the four corners of the pleadings: consideration of matters outside the complaint will convert the motion to dismiss into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See Merswin v. Williams Cos.*, 364 F. App'x 438, 441 (10th Cir. 2010) (unpublished) (noting that a district court's consideration of matters outside the complaint generally requires the court to treat a motion to dismiss as a motion for summary judgment); *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991) (same). A district court may, but is not required to, consider documents referred to in the complaint when those documents are central to the plaintiff's claim and the parties do not dispute their authenticity. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1216 (10th Cir. 2007). The Court may "take judicial notice of its own decision and records in a prior case involving the same parties." *Merswin*, 364 F. App'x at 441. Federal courts may also "take notice of proceedings in other courts, both within and without the federal judicial system, if those

2

proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979).

BACKGROUND

I.     **The Plaintiffs' Insurance Policy and Claims**

Laura Albers purchased a Long-Term Care Policy ("Policy") from Continental with an original effective date of March 4, 1995, that was renewable annually. (Doc. 1 Ex. 4 at 5.) The parties agree that the Policy had been properly renewed and was in force at all relevant times. The Policy defines a Long-Term Care Facility ("LTCF") as

> A place primarily providing Long-Term Care and related services on an inpatient basis, which:
> 1. is licensed by the state where it is located; and
> 2. provides skilled, intermediate, or custodial nursing care under the supervision of a physician; and
> 3. has 24-hour-a-day nursing services provided by or under the supervision of a registered nurse (R.N.), licensed vocational nurse (L.V.N.), or licensed practical nurse (L.P.N.), and
> 4. keeps a daily medical record of each patient; and
> 5. may be either a freestanding facility or a distinct part of a facility such as a ward, wing, unit, or swing-bed of a hospital or other institution.
>
> A [LTCF] does not mean a hospital or clinic, boarding home, home for the aged or mentally ill, rest home, community living center, place that provides domiciliary, residential, or retirement care, place which operates primarily for the treatment of alcoholics or drug addicts, or a hospice. However, care or services provided in these facilities may be covered subject to the conditions of the Alternate Plan of Care Benefit provision.

(Doc. 1 Ex. 4 at 10.) The Policy states that when a policyholder would otherwise require confinement in an LTCF, Continental may pay for services under a written Alternate Plan of Care ("APC"), if an APC is a medically acceptable option that 1) is agreed to by the policyholder, the policyholder's physician, and Continental; 2) may be initiated by Continental or the policyholder; and 3) is developed by or with health care professionals. (*Id.* at 13.) The

3

Policy provides that any APC that is mutually agreeable to Continental, the policyholder, and the policyholder's physician will be adopted. (*Id.*)

On or about October 1, 2013, Laura Albers entered Bee Hive Homes, an assisted living facility; she remains there to this date. (Doc. 1 Ex. 2 at 2.) Prior to entering Bee Hive Homes, Ms. Albers timely requested LTCF benefits for care rendered at Bee Hive. (*Id.*) Continental did not respond to Ms. Albers's request for benefits until December 9, 2013, at which time Continental formally denied the request for benefits on the basis that Bee Hive Homes did not qualify as an LTCF because it 1) does not offer 24-hour-a-day nursing services and 2) does not provide nursing care under the supervision of a physician. (*Id.* at 2-3; Doc. 24 Ex. 1 at 2.)

Because Bee Hive Homes provided appropriate nursing care under the supervision of Ms. Alber's physician and provides nursing services 24-hours-a-day under the supervision of an R.N.,[2] the Plaintiffs requested that Continental review its decision to deny benefits. Continental again denied LTCF benefits on March 27, 2014, stating that nursing care is not provided under a physician's supervision and that there is not an R.N., L.P.N., or L.V.N. on-site, even though there is an acceptable nurse on-call. (Doc. 1 Ex. 2 at 3.)

The Plaintiffs are part of Settlement Class II in the *Pavlov* Settlement, as explained below, because Ms. Albers had an in-force policy in 2009, when the Settlement was entered into.

## II.    The *Pavlov* Proceedings

Two representative plaintiffs filed an Amended Class Action Complaint against Continental on April 4, 2008, on the basis that Continental denied coverage under the plaintiffs' Long-Term Care Insurance Policies, and the policies of other similarly situated individuals, because the LTCFs did not meet the nursing supervision requirement of having an R.N., L.V.N.,

---

[2] For the purposes of the motion to dismiss, I accept all well-pleaded facts in the complaint as true. *Ashcroft*, 556 U.S. at 667.

or L.P.N. on-site 24-hours-a-day.[3] Amended Class Action Complaint with Jury Demand, *Pavlov*, No. 5:07-cv-02580-SL, ECF No. 24 Ex. 1 (N.D. Ohio Feb. 27, 2008).[4] The policies defined a "Long-Term Care Facility" in exactly the same language as used in Ms. Albers's Policy. *See* ECF No. 24 Ex. 3 at 8. The third requirement—that an LTCF must have 24-hour-a-day nursing services provided by or under the supervision of an R.N., L.P.N., or L.V.N.—is referred to as the "nursing services" or "nursing supervision" requirement. The representative plaintiffs brought breach of contract and bad faith claims against Continental on the basis of these denials. ECF No. 24 Ex. 1 at 6. The *Pavlov* plaintiffs alleged that Continental "intentionally withheld payment in an arbitrary and capricious manner" by adding an on-site requirement for nursing supervision in its claims handling process. *Id.*

The representative plaintiffs filed an unopposed Motion for Final Approval of Class Action Settlement and Certification of Class for Settlement Purposes on August 14, 2009, which included the Settlement Agreement as Exhibit 1. ECF No. 93. The Settlement Agreement listed two classes: Settlement Class I and Settlement Class II. Settlement Class I includes all persons

> (1) who own or owned an individual Long Term Care 1 series policy included in the [stipulated] list of policies . . . purchased from [Continental];
> (2) who submitted a claim between May 24, 2003[,] and the Settlement Date for benefits for a stay at a care facility;
> (3) whose claim was denied because there was a Registered Nurse, Licensed Vocational Nurse, or Licensed Practical Nurse on staff (or providing service through an outside vendor), but was not on-site 24-hours-a-day; and
> (4) whose claim was not deniable on any other basis.

---

[3] The *Pavlov* Court granted plaintiffs' motion for leave to file the Amended Class Action Complaint and deemed the amended complaint filed as of the date of that order. Memorandum Opinion and Order, *Pavlov*, No. 5:07-cv-02580-SL), ECF No. 33 (N.D. Ohio Apr. 4, 2008.

[4] All future references to *Pavlov*, No. 5:07-cv-02580-SL (N.D. Ohio) will be made by ECF No. in that case.

*Id.* at 15. Settlement Class II includes all persons "who have an In-Force Policy included in the [stipulated] list of policies . . . . A member of Settlement Class II may also be a member of Settlement Class I." *Id.* at 15-16. The Court certified both classes by Memorandum Opinion and Order on October 7, 2009. ECF No. 107 at 15.

Under the terms of the *Pavlov* Settlement, Settlement Class II members

> shall release and forever discharge [Continental] from any and all actual or potential claims, actions, [and] suits, . . . whether based on any federal or state law or a right of action, . . . which the Plaintiffs and the Class Members or any of them ever had or now have, or can have, or shall or may hereafter have against [Continental] relating to the interpretation, application, implementation or enforcement of the Nursing Services Requirement of the Polices, any claim or coverage decision made with respect to that Nursing Services Requirement, or any claim that was made for facility care but was not approved under the APC Benefit after being denied under the LTCF Benefit. . . . [I]t is the intention of Plaintiffs and the Class Members in executing this Release to fully, finally, and forever settle and release all such matters, and all claims relating to such matters, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action). Notwithstanding the broad scope of this release, future claims to enforce the terms of this Settlement are not released.

ECF No. 93 Ex. 2 at 19-20.

In exchange for this release, Settlement Class II members would receive "the benefits of revised claim handling standards with regard to the Policies' Nursing Services Requirement." *Id.* at 25. The revised claims handling standards dictate that:

> (1) The Policies' [LTCF] requirements other than the Nursing Services Requirements shall be outside of, and unaffected by, this Settlement.
> (2) When a claimant qualifies for care under the terms of a Policy, the following standard shall be used to determine whether a particular facility meets the Policy's Nursing Services Requirement in order to qualify as a LTCF:

    i.    A qualified LTCF provides 24-hour-a-day nursing services by or under the supervision of a [R.N., L.V.N., or L.P.N.]. This means that:

        a. Nursing services must be provided on a 24-hour-a-day basis. "Nursing services" means the provision of services essential to the maintenance or restoration of health by attending to the needs of the claimant. Nursing services may be provided by a R.N., L.V.N., or L.P.N. who is on-site at all times, or by others under the supervision of a licensed nurse as defined in paragraph (b). The facility must actually provide nursing services as described in this guideline.

        b. Supervision of nursing services shall be satisfied if a R.N., L.V.N., or L.P.N. is on-site no less than 5-hours-a-day, 7-days-a-week, and is on call via an electronic communication device such as a cell phone, pager or similar means the balance of the time.

        c. The nurse, supervising nurse, or other personnel providing or supervising the 24-hour-a-day nursing services may be employed by the facility or contracted through an outside agency.

    ii.   Claimants who do not qualify for benefits because the facility does not provide the requisite amount of on-site nursing supervision as defined [above in Part 2(i)(b)] will be offered an [APC] benefit or accommodation described below:

        a. The APC benefit or accommodation shall be paid at 25% of the greater of the daily LTCF Benefit under the policy or the daily cost of the facility. . . .

*Id.* at 25-27. Additionally, the *Pavlov* Settlement provides that "[c]laims of [Continental's] noncompliance with [the Settlement Agreement's] terms shall be treated as breach of contract claims and not claims of violation of a court order." *Id.* at 27.

Finally, the *Pavlov* Settlement provides that "[a]ny action to enforce this Settlement Agreement shall be commenced and maintained only in the United States District Court for the Northern District of Ohio." *Id.* at 49. The *Pavlov* Court approved the *Pavlov* Settlement in full on

October 7, 2009. ECF No. 108. The Northern District of Ohio retained jurisdiction for the purposes of enforcing the *Pavlov* Settlement. ECF No. 93 at 49.

**DISCUSSION**

Continental argues first that the Plaintiffs' claims regarding the nursing supervision requirement are barred by claim preclusion under the *Pavlov* Settlement and that the Plaintiffs' claim based on the physician supervision requirement is moot because Continental's denial of benefits was appropriate under the nursing supervision requirement, and alternatively that the case should be transferred to the Northern District of Ohio pursuant to a forum selection clause in the *Pavlov* Settlement. Continental requests that I consider documents outside the four corners of the Complaint while deciding this motion to dismiss. The Plaintiffs counter that Continental waived the defense of claim preclusion based on the *Pavlov* Settlement, that claim preclusion does not apply because there is no identity of causes of action, that the *Pavlov* Settlement preserves policy holders' right to bring breach of contract claims related to the nursing supervision requirement, and that transfer to the Northern District of Ohio is neither required under the *Pavlov* Settlement nor appropriate under federal transfer statutes.

I.      **Consideration of Documents Outside of the Complaint**

I may consider documents referred to in the Complaint if those documents are central to the Plaintiffs' claims and the parties do not dispute the documents' authenticity. *Alvarado*, 493 F.3d at 1215. The Complaint specifically refers to Policy giving rise to this case. Continental does not dispute that the Policy is authentic. Therefore, I have considered the Policy in connection with this motion to dismiss.

Additionally, the Complaint refers to Continental's December 9, 2013, denial of the Plaintiffs' request for benefits. (*Id.* at 2-3.) Continental attached the denial letter to its Reply.

8

(Doc. 24 Ex. 1.) The bases for the denial are central to this case and the parties do not dispute that the denial letter is authentic. Therefore, I have considered the denial letter in connection with this motion to dismiss.

The December 9, 2013, denial letter specifically references "the expanded claim handling standard outlined in the Pavlov settlement." (*Id.* at 2.) Continental requests, and the Plaintiffs do not object, that I take judicial notice of the *Pavlov* Settlement. I find that the *Pavlov* Settlement is a prior proceeding in a federal court, involves the same parties, and bears a direct relation to matters at issue in this case. *See Merswin*, 364 F. App'x at 441 (discussing the circumstances in which it is appropriate to take judicial notice of a prior proceeding); *St. Louis Baptist Temple*, 605 F.2d at 1172 (same). Judicial notice of the *Pavlov* Settlement is appropriate in this case and is so taken.

Accordingly, I am considering this motion as a motion to dismiss and not as a motion for summary judgment.

## II.    Claim Preclusion

Claim preclusion prohibits parties from relitigating claims "arising out of the same transaction, or series of connected transactions, as a previous suit." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999) (quotation omitted). Claim preclusion requires "(1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits." *Id.* at 1226. The Plaintiffs do not dispute that the first two elements are present. The question, then, is whether the Plaintiffs' claims regarding the nursing supervision requirement are sufficiently similar to the claims in the *Pavlov* Settlement to warrant the operation of claim preclusion. Even if claim preclusion applies, the Plaintiffs argue

that Continental waived the defense of claim preclusion by failing to raise the matter in the December 9, 2013, denial letter.

The Tenth Circuit adopted the "transactional approach" for determining what gives rise to identity of the causes of action. *Id.* at 1227. The same transaction or series of transactions is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (quotation omitted).

Continental argues that the Plaintiffs' claims with regard to the nursing services requirement arise out of the same transactions as those at issue in *Pavlov* because both sets of claims rely on the same set of factual allegations. The Plaintiffs contend that their claims arise out of the claims handling procedures established by *Pavlov*, and therefore cannot logically be considered the same as the cause of action which established those procedures. Alternatively, the Plaintiffs argue that the *Pavlov* Settlement specifically excepted from the release future claims like the ones in this case.

The representative plaintiffs in *Pavlov* argued that Continental impermissibly read a 24-hours-a-day on-site requirement into the nursing services provision of the Long-Term Care Policies. *See* ECF No. 24 Ex. 1 at 6. As a result of the *Pavlov* Settlement, Continental reformed its claims handling procedures to consider the nursing services requirement met when an R.N., L.P.N., or L.V.N. is on-site at least 5-hours-a-day, 7-days-a-week, and is available by some means of electronic communication at all other times. ECF No. 93 Ex. 2 at 25.

The Plaintiffs urge that their claims arise out of the expanded claims handling procedures established in the *Pavlov* Settlement. (Doc. 23 at 5.) The Complaint alleges, rather ambiguously,

that Bee Hive Homes provides "nursing services 24-hours per day by and under the supervision of a registered nurse." (Doc. 1 Ex. 2 at 3.) If the Complaint alleged that Continental impermissibly read a 24-hours-a-day on-site requirement into the nursing services requirement, it would be making the same claim that was previously litigated in *Pavlov*. However, on a motion to dismiss, I am required to construe all well-pleaded allegations in the light most favorable to the plaintiff. *Nakkhumpun*, 782 F.3d at 1146. I therefore construe the Complaint to allege that Bee Hive Homes provides adequate nursing supervision under the terms of the Policy and that Continental failed to apply the expanded claims handling procedures outlined in the *Pavlov* Settlement.

Failure to apply the expanded claims handling procedures established in the *Pavlov* Settlement is logically and necessarily distinct from reading a 24-hours-a-day on-site requirement into the policies. It would have been impossible for the representative plaintiffs in *Pavlov* to bring a claim like this in 2007 because the procedures were not established until the *Pavlov* Settlement in 2009. I find that there is no identity of the causes of action between the Plaintiffs' claims and claims brought in *Pavlov*. Accordingly, claim preclusion does not bar this case.

Continental additionally contends that the *Pavlov* Settlement released all future claims based on the nursing services requirement. While this is an accurate statement of the terms included in the *Pavlov* Settlement, Continental fails to appreciate that the *Pavlov* Settlement expressly allowed for breach of contract claims based on the release. *See* ECF No. 93 Ex. 2 at 25. The *Pavlov* Settlement effectively released all claims related to Continental's use of a 24-hours-a-day on-site requirement for nursing supervision, but did not release future claims for breach of contract when Continental allegedly misapplies the expanded claims handling procedures. The

11

Plaintiffs' claims related to the nursing services requirement do not fall within the scope of the *Pavlov* Settlement and do not require dismissal.

Because I find that claim preclusion does not apply to this case, the Plaintiffs' argument that Continental waived the defense of claim preclusion is moot. Continental's motion to dismiss this case on the basis of claim preclusion is denied.

### III.   Physician Supervision Requirement

Continental very briefly argues that if the denial of coverage was appropriate under the nursing services requirement, it does not matter if the denial was appropriate with regard to the physician supervision requirement. This may be true. However, the Plaintiffs sufficiently pled that Bee Hive Homes met both the nursing services and the physician supervision requirements. Under these circumstances, the Plaintiffs could prove a set of facts that would entitle them to relief. *See Ashcroft*, 556 U.S. at 667. Therefore, Continental's motion to dismiss the claims relating to the physician supervision requirement is denied.

### IV.   Motion to Transfer

Continental argues that, if this case is not barred by claim preclusion, the *Pavlov* Settlement requires that I transfer the case to the Northern District of Ohio. In support of this argument, Continental contends that the Plaintiffs' claims with regard to the nursing services requirement are properly construed, collectively, as an action to enforce the *Pavlov* Settlement. The Plaintiffs respond that they have brought breach of contract claims, not enforcement claims, and that the *Pavlov* Settlement specifically allows for future breach of contract claims. In reply, Continental again urges that all claims related to the nursing services requirement were released in the *Pavlov* Settlement, except those to enforce the agreement. Continental's motion to transfer the case to the Northern District of Ohio hinges on the interpretation that the Plaintiffs brought

claims to enforce the *Pavlov* Settlement. If this is an action to enforce the *Pavlov* Settlement, the parties appear to agree that the Northern District of Ohio would be the appropriate venue.

However, Continental concedes that the Plaintiffs did not bring an action to enforce the *Pavlov* Settlement. (Doc. 16 at 13.) Upon conceding that the Plaintiffs did not bring an action to enforce the *Pavlov* Settlement, Continental maintains that the forum selection clause included in that agreement controls this case. Continental argues that the "forum selection clause applies to other related claims that are part of the same set of operative facts." (*Id.* at 14.) In support of this argument, Continental relies on 28 U.S.C. §§ 1404(a) and 1406(a), and *Knight Oil Tools, Inc. v. Unit Petroleum Co.*, No. CIV 05-0669 JB/ACT, 2005 WL 2313715 (D.N.M. Aug. 31, 2005).

Continental relies on *Knight Oil* for the proposition that any claims related to the denial of coverage are subject to the forum selection clause in the *Pavlov* Settlement. The contract at issue in *Knight Oil* was a Master Well and Lease Service Contract. The forum selection clause covered "any action involving [that] contract," which the Court interpreted to include tort actions. *Knight Oil*, 2005 WL 2313715, at *13. Unlike *Knight Oil*, the forum selection clause in the *Pavlov* Settlement was more narrowly tailored, stating that "[a]ny action to *enforce* this Settlement Agreement shall be commenced and maintained only in the United States District Court for the Northern District of Ohio." ECF No. 93 Ex. 2 at 49 (emphasis added). Unlike *Knight Oil*, *Pavlov* requires the case to be transferred to the Northern District of Ohio only if the action is to enforce the settlement agreement. The question, then, is whether the Plaintiffs' claims constitute an action to enforce the settlement agreement.

The Plaintiffs allege that Continental breached its contract with Laura Albers by misapplying the nursing services requirement and the physician supervision requirement. The

13

Plaintiffs do not claim that Continental violated the *Pavlov* Settlement by impermissibly interpreting the nursing services requirement in contravention of that agreement.

A motion to enforce the settlement agreement arises when one party claims that the other breached the agreement. *See, e.g.*, *Morris v. City of Hobart*, 39 F.3d 1105, 1108 (10th Cir. 1994). No such allegation exists in this case. The Plaintiffs do not claim that Continental breached the *Pavlov* Settlement. Rather, the Plaintiffs claim that Continental breached the terms of its contract with Ms. Albers by improperly denying coverage.

This is a breach of contract action, not an action to enforce the settlement agreement. Therefore, the forum selection clause does not apply.

Contrary to Continental's assertion, 28 U.S.C. § 1404(a), governing change of venue, does not apply. Section 1404(a) states that "a district court may transfer any civil action to any other district or division where it might have been brought" if such a transfer is in the interest of justice or for the convenience of the parties and witnesses, or "to any district or division to which all parties have consented." Continental argues that all parties have consented to transferring the case to the Northern District of Ohio pursuant to the forum selection clause in the *Pavlov* Settlement. As discussed above, the forum selection clause does not apply to this claim. The plaintiffs do not consent. The Plaintiffs reside in New Mexico and specifically state that any transfer to the Northern District of Ohio would be inconvenient for them. Section 1404(a) is inapplicable to support transfer of this case.

Likewise, 28 U.S.C. § 1406(a) does not apply. Section 1406(a) allows for the transfer of venue or dismissal of a case when the case is brought in the wrong venue or district. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." Here, Ms. Albers resides at the Bee

Hive Home in New Mexico. Continental denied coverage on the basis that the Bee Hive Home, in New Mexico, did not meet the Policy's definition of an LTCF. The events giving rise to the claim occurred in New Mexico. Venue is therefore proper in the District of New Mexico.

Continental's motion to transfer the case to the Northern District of Ohio is denied.

## CONCLUSION

For the reasons discussed above, the doctrine of claim preclusion does not apply with regard to the *Pavlov* Settlement to prohibit the Plaintiffs from bringing these claims. Additionally, the forum selection clause included in the *Pavlov* Settlement covers actions to enforce the settlement, but not actions for breach of contract. This is an action for breach of contract and does not bear on the enforcement of the *Pavlov* Settlement. Accordingly, Continental's Motion to Dismiss or in the Alternative to Transfer (Doc. 16) is denied.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.